UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWTIS RHODEN,<br><br>             Plaintiff;<br><br>      v.<br><br>STEPHEN MAYBERG, et al.,<br><br>             Defendants. | Case No. 1:07-CV-01151-BLW-LMB<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

The Court has before it a Report and Recommendation filed by the United States Magistrate Judge. (Dkt. 48.) The Magistrate Judge recommends that Defendants' Motion to Dismiss be granted based on qualified immunity. (*Id*. at 8.) Plaintiff has filed timely objections to the Report and Recommendation (Dkt. 53), and the Court now reviews Plaintiff's objections in accordance with 28 U.S.C. § 636(b)(1)(C).

## BACKGROUND

Plaintiff, a civil detainee detained by the State of California under the Sexually Violent Predators (SVP) Act[1] and a patient at the Coalinga State Hospital, complains that Defendants violated his constitutional rights by failing to provide him with greater access

---

[1] *See* Cal. Welf. & Inst.Code § 6600.

**ORDER ADOPTING REPORT AND RECOMMENDATION - 1**

to a smoke-free outdoor exercise area. Plaintiff's only choices for exercise during the week were an indoor gymnasium or an outdoor "smoker's courtyard." During the weekends, policy provided that patients should have access to a track and softball field, except during those times of the year when the temperature was over 90 degrees. Despite the policy, Plaintiff alleges that, in fact, he was given access to the track and softball fields only once every fifteen weekends (not every weekend) over a span of two and a half years. He believes he should have been given access to the track and softball field during the week, regardless of the temperature.

Plaintiff also disagrees with the policy that the track and softball field are closed to patients when the temperature reaches 90 degrees, which occurs for about 70 days between May through September. Plaintiff also believes that there should be a restroom facility available outdoors.

Plaintiff first requested week-day access to the track and softball field on October 8, 2007. His request was denied. He made a second request on May 5, 2008, with a response that his request was under consideration. Plaintiff alleges that staff used that same response frequently, without making any changes.

In the summer of June 2008, Coalinga State Hospital was issued a fine for failing to comply with state law ETS standards, and the OSHA report particularly cited "appreciable ETS smoke" existing in the outdoor courtyards. On June 25, 2008, patients were given notice that Coalinga Hospital would be designated a smoke-free facility on August 1, 2008. During the course of this action, Plaintiff conceded that he had no facts

**ORDER ADOPTING REPORT AND RECOMMENDATION - 2**

to support his claims for injunctive and declaratory relief, given that the entire facility was smoke-free after August 1, 2008.

## DISCUSSION

The Magistrate Judge determined that Defendants were entitled to qualified immunity from damages. Plaintiff argues that the Report contains incorrect factual findings. Plaintiff states that the Magistrate Judge did not consider that Plaintiff actually was permitted to use the track and softball field only eight times between April 2006 and August 1, 2008 (once every fifteen weekends), and that this lack of access was not due to inclement weather, unusual circumstances, or disciplinary needs. (Plaintiff's Objections, Dkt. No. 53 at 5.) The Court has considered these additional allegations in reaching its conclusion, except the Court must also consider Plaintiff's statements in the Amended Complaint that outdoor exercise is not permitted when the temperatures reach 90 degrees, generally from April through September. High temperatures can constitute "inclement" (severe) weather.

Questioning the Report's analysis, Plaintiff correctly points out that a prison's later remedying of a constitutional violation bears on only an inmate's request for injunctive or declaratory relief, but does not bear on his request for damages during the past time period when the constitutional violation existed. In *McKinnon v. Taladega County, Alabama*, 745 F.2d 1360, 1362 (11th Cir. 1984), the Court explained:

> A claim for damages does not expire upon the termination of the wrongful conduct. Unlike declaratory and injunctive relief, which are prospective remedies, awards for monetary damages compensate the claimant for

**ORDER ADOPTING REPORT AND RECOMMENDATION - 3**

alleged past wrongs.

*Id*. at 1362 (internal citation omitted). Therefore, this Court does not consider that fact in the qualified immunity analysis.

Plaintiff next argues that the Report applies the Eighth Amendment, rather than the Fourteenth Amendment, to the facts at issue. The substantive rights of civilly committed persons derive from the Due Process Clause of the Fourteenth Amendment and not the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Hydrick v. Hunter*, 500 F.3d 978, 994 (9th Cir. 2007) *(vacated on other grounds by Hunter v. Hydrick*, – U.S. –, 129 S. Ct. 2431, (2009) (mem.)). However, because civil detainees may not be punished, Eighth Amendment cases "set a floor" for considering the claims of civil detainees. *Id*. at 989.

Additionally, the United States Court of Appeals for the Ninth Circuit has determined that the Fourteenth Amendment is a "more protective" standard than the Eighth Amendment, *Jones v. Blanas,* 393 F.3d 918, 931 (9th Cir. 2004), and the United States Supreme Court has directed that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982). The Ninth Circuit has held that the standards applicable to all civilly committed persons should apply to SVPs, as well. *Hydrick*, 500 F.3d at 989.

Plaintiff's task in the qualified immunity context is to point to precedential cases– interpreting either the Fourteenth Amendment or the Eighth Amendment–that constitute

**ORDER ADOPTING REPORT AND RECOMMENDATION - 4**

"clearly-established" law governing the particular issue at hand. Plaintiff's claims lie at the intersection of two federal rights: first, the right to regular outdoor exercise, *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979); and second, the right to be free from excessive exposure to Environmental Tobacco Smoke (ETS), *Helling v. McKinney*, 509 U.S. 25, 29 (1993). The crux of the matter is whether clearly established law existed that would have placed Defendants on notice that they were violating Plaintiff's constitutional rights by offering him daily regular indoor smoke-free exercise, intermittent outdoor smoke-free exercise except when the temperatures reached 90 degrees, and daily outdoor exercise that temporarily exposed him to "appreciable" ETS.

While there is clearly established case law governing a prisoner's right not to be housed in a cell where he is exposed to ETS,[2] and there is clearly established case law governing an inmate's right to outdoor exercise when the inmate is housed in "harsh" conditions, there is no clearly established case law at the intersection of these two rights, where Plaintiff's case lies. In other words, case law did not put Defendants on notice that they could have been violating Plaintiff's rights by housing him in an environment where he was not exposed to ETS indoors or during the vast majority of his day, but only for a

---

[2] In *Helling v. McKinney*, 509 U.S. 25 (1993), where the inmate complained that he was housed with an inmate who smoked five packs of cigarettes per day, the United States Supreme Court recognized that an inmate could assert an Eighth Amendment claim by alleging that prison officials, acting with deliberate indifference, exposed the inmate "to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Id*. at 35. Several other courts have observed that "*Helling* does not guarantee plaintiff a smoke free environment." *Roberts v. Ozmint*, 2006 WL 2303183, at *10 (D.S.C. 2006) (citing an unpublished case) (no deliberate difference to inmate in permitting him to be minimally exposed to ETS, where inmate was housed in a nonsmoking cell but exposed to smoke during outdoor recreation).

**ORDER ADOPTING REPORT AND RECOMMENDATION - 5**

short time period in the outdoor exercise yard; and where daily indoor smoke-free exercise, intermittent outdoor smoke-free exercise, and daily smoke-exposed outdoor exercise was offered.

Both Ninth Circuit cases requiring regular outdoor exercise specifically pointed to the inmate's "harsh" conditions as one of the reasons regular outdoor exercise was required. *Spain v. Procunier*, 600 F.2d 189 (9th Cir. 1979); *Allen v. Sakai*, 48 F.3d 1082 (9th Cir. 1994).[3] There is no case that addresses what combination of outdoor and indoor exercise passes constitutional muster when conditions are not "harsh." No allegations of "harsh" conditions are present here. Plaintiff was being afforded some combination of his rights to live in a generally smoke-free environment, to exercise regular, and to exercise outdoors–both with and without ETS, although mainly with ETS. Plaintiff's citations to

---

[3] In *Spain v. Procunier*, the Court determined that "outdoor exercise was required for these plaintiffs who were confined to the AC for more than four years." 600 F.2d at 200. The conditions of confinement were described as follows:

> *Several factors combined to make outdoor exercise a necessity*. AC prisoners were in continuous segregation, spending virtually 24 hours every day in their cells with only meager out-of-cell movements and corridor exercise. Their contact with other persons was minimal. The district court found that "(p)laintiffs live in an atmosphere of fear and apprehension and are confined under degrading conditions without affirmative programs of training or rehabilitation and without possible rewards or incentives from the state which will give them a semblance of hope for their transfer out of the AC."

*Id*. at 199 (emphasis added). In *Allen v. Sakai*, the Ninth Circuit Court upheld denial of qualified immunity where inmate was deprived of outdoor exercise for six weeks, where inmate's incarceration in SHU was "indefinite and therefore potentially long-term, and under admittedly 'harsh' conditions." 48 F.3d at 1087.

**ORDER ADOPTING REPORT AND RECOMMENDATION - 6**

cases holding that civil detainees have a "constitutional right to be safe"[4] or that they should be afforded "more considerate treatment" than criminals[5] do not provide adequate precedent for the question at issue.

The *Hydrick* Court gave several examples of the types of cases in which qualified immunity should be denied in the civil detainee setting, by analogizing to prisoner cases:

> [The] admission-that it is not clear how much more extensive the rights of SVPs are-does not inexorably lead to the conclusion that there can be no violation of clearly established law. It may not be clear exactly what due process rights are to be afforded SVPs, but surely it is clear that certain actions-forcing SVPs to live in squalid conditions, turning a blind eye to physical attacks against SVPs, and forcing SVPs to take medication as punishment or in retaliation for filing a lawsuit or for refusing to speak during treatment sessions-transgress the boundary. Surely it would not require "law train [ing]" or clairvoyance to recognize that these actions, as alleged by the Plaintiffs, do no comport with due process.

*Id.*, 500 F.3d at 990 n.8.

However, Plaintiff's claims are not within the clear boundaries of those types of cases set forth by the Ninth Circuit in *Hydrick*. No clearly established law exists governing what combination of indoor and outdoor exercise is appropriate for inmates or civil detainees where "harsh" living conditions are not at issue, but where facility staff must take into consideration the possible health risks attendant with high summer temperatures.

## CONCLUSION

---

[4] *Neely v. Feinstein*, 50 F.3d 1502, 1508 (9th Cir, 1995).

[5] *Youngberg v. Romeo*, 457 U.S. at 322.

Here, while Plaintiff's aspirations to keep himself physically fit and healthy are commendable, his claims do not arise to the type of clear and more severe violations cited by the *Hydrick* court that would support a denial of qualified immunity to Defendants.[6] Claims against un-served Defendant Kramer will be dismissed because the claims would be subject to the same qualified immunity analysis.

Plaintiff has not objected to the other Recommendations. The Court agrees that Plaintiff's official capacity claims are subject to dismissal, because he cannot obtain damages as a result of the Eleventh Amendment and because no current facts to support Plaintiff's injunctive or declaratory claims exist. In addition, because Plaintiff has not asserted any personal participation of Defendant Mayberg in the alleged violations, but only official capacity claims would be appropriate, all claims against Defendant Mayberg are dismissed.

For the reasons stated herein, the Court will adopt the Magistrate Judge's Report and Recommendation, with the exceptions as noted above. Accordingly, Defendants'

---

[6] Plaintiff's allegations that he had hot ashes fly into his eyes and burn them on numerous occasions while he jogged in the courtyard between May 17, 2006, and March 24, 2008, are offered as factual support for his claim that he should have been provided with access to the track and softball field every day, and have not been treated as an independent claim. Thus, these allegations are covered by qualified immunity for the reason that the courtyard was offered mainly for smoking, and the indoor exercise facility and intermittent use of the smoke-free track and softball fields were offered for exercise. In other words, notwithstanding Plaintiff's knowledge of the risk, Plaintiff chose to use the courtyard for jogging, an activity that would put him in contact with many more smokers than had he simply stood in the courtyard. Plaintiff's claim that there was no restroom facility in the courtyard, causing him to urinate on himself because he has prostate and bladder problems, also appears to be factual support for his claim, and, in any event, it is de minimis, as Plaintiff does not explain why he could not use the restroom before going outside or obtain medical undergarments to address this problem.

**ORDER ADOPTING REPORT AND RECOMMENDATION - 8**

Motion to Dismiss will be granted, and this case will be dismissed with prejudice.

## ORDER

**IT IS ORDERED**:

1. The conclusions of the Report and Recommendation (Dkt. 48) is ADOPTED.

2. Defendants' Motion to Dismiss (Dkt. 36) is GRANTED.

3. Plaintiff's entire case is DISMISSED with prejudice.

DATED: **January 21, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**ORDER ADOPTING REPORT AND RECOMMENDATION - 9**